UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| BURNS MOTORS, LTD., *et al*, | § § | |
| Plaintiffs, | § § | |
| VS. | § | CIVIL ACTION NO. 7:17-CV-421 |
| FCA USA LLC, *et al*, | § § § | |
| Defendants. | § § | |

# OPINION

The Court now considers the motion to remand,[1] filed by Burns Motors, Ltd. ("Burns") and Burns Income Properties, Ltd. ("Burns Income") (collectively "Plaintiffs"), the motion to dismiss,[2] filed by FCA US LLC ("FCA"), and the request for leave to amend that Plaintiffs' embedded within their response to the motion to dismiss.[3] The motion to dismiss is pursuant to both Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6). After considering the record and relevant authorities, the Court **DENIES** the Rule 12(b)(1) motion to dismiss, **GRANTS** the motion to remand, and **DENIES AS MOOT** the Rule 12(b)(6) motion to dismiss as well as the motion for leave to amend.

### I. Background

Plaintiffs allege the following factual history in their original petition: "In 2011, Burns was approached by FCA, through [Teresa] McDaniel [("McDaniel")], and solicited to add the 'Jeep Line' to its existing 'new car and truck' lines of Chrysler, Dodge and Ram vehicles. As a mandatory condition of its acceptance of the Jeep Line, Burns was required to construct a new

---

[1] Dkt. No. 9.
[2] Dkt. No. 3.
[3] Dkt. No. 10, at ¶ 71.

sales facility and service facility compliant with the FCA design criteria."[4] The following year, Plaintiffs solicited guidance from an FCA recommended architect, Bill Pye ("Pye") for the design of the new facilities.[5] "Pye provided Burns with a set of FCA approved Design Criteria which set forth FCA's minimum size requirements with respect for its new 'Millennium' design and [Plaintiffs], along with [] Pye's guidance, designed the facilities in accordance with the FCA requirements."[6] The facilities were designed larger than the FCA's minimum requirements "in order to accommodate the projected sales numbers, which were requested by FCA."[7] After a series of changes were made to the design plans as required by FCA, the design plans were approved by FCA in October 2013.[8]

Plaintiffs further allege that in 2012, FCA entered into an agreement with Payne Motors, which provided same with "a 7 1/2 year right of first refusal for the placement of a new FCA branded dealership within the McAllen Sales Locale[,]" and this agreement was not disclosed to Burns.[9] "At no point during 2012 or 2013, while [Plaintiffs] were completing the design of the new sales and service facilities according to the FCA recommended design, did either FCA or McDaniel [(collectively "Defendants")] take any steps to notify and/or disclose to [Plaintiffs] the existence of this agreement[.]"[10] In addition to not disclosing the existence of the agreement with Payne Motors, Defendants failed to "suggest [to Plaintiffs] that the sales and service facilities, for which the plans which had been submitted, were far too large, given the potential of a new

---

[4] Dkt. No. 1-3, at ¶ 3.
[5] *Id.* at ¶ 4.
[6] *Id.* at ¶ 5.
[7] *Id.* at ¶ 6.
[8] *Id.*
[9] *Id.* at ¶ 7.
[10] *Id.* at ¶ 9.

dealership being placed in the McAllen Sales Locale."[11] Once FCA approved the plans for Plaintiffs' facilities, Plaintiffs obtained financing and starting construction of the facilities.[12]

Plaintiffs also contend that after demolishing the old facilities, and during the construction process of the new facilities, Burns apprised Defendants on the status of the construction project.[13] Defendants encouraged the construction and never disclosed the agreement with Payne Motors.[14] On August 31, 2015, Burns reported to Defendants about the construction project, with photographs "which showed, among other things, that the 'old' service facility(ies) was[/were] being demolished to make way for the construction of the new sales facility."[15] Defendants responded "Awesome!!" to Burns' report.[16] Plaintiffs continued the construction without disclosure by Defendants about the agreement with Payne Motors, and ultimately, in November 2015, Defendants "began sending a series of emails advising Burns that a new sales point (in the McAllen Sales Locale) was 'coming' and that the FCA approved Burns' facilities were too large."[17] Waiting to make that disclosure until November 2015 "assured that the Burns' service facility was already completed (and grossly too large for the newly anticipated planning potential) and that the sales facility was already framed, plumbed and awaiting only the foundation pour."[18]

Plaintiffs additionally assert that Defendants thereafter requested that Burns develop a proposal to mitigate its damages.[19] Burns subsequently contacted Defendants "and requested information about the newly to-be-proposed sales point and to this date (except for what was

---

[11] *Id.*
[12] *Id.* at ¶ 10.
[13] *Id.* at ¶ 11.
[14] *Id.*
[15] *Id.* at ¶ 12.
[16] *Id.* at ¶ 13.
[17] *Id.* at ¶ 14.
[18] *Id.* at ¶ 15.
[19] *Id.* at ¶ 17.

obtained through discovery in the administrative hearing), [Defendants] have refused to provide this information despite knowing its importance to any mitigation efforts."[20] In the end, Plaintiffs expended millions of dollars in their construction project, and during such time, sacrificed millions of dollars in sales and service revenue.[21] Furthermore, Plaintiffs are "now placed in a competitively disadvantaged position by having facilities which will require more to operate than it otherwise should have cost, driving the costs of automobiles and trucks higher, with the attendant profits lower."[22]

Plaintiffs eventually filed suit against Defendants in state court, alleging causes of action for fraud, negligent misrepresentation, and conspiracy.[23] FCA subsequently removed the case to this Court, asserting subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).[24] After removal, Plaintiffs filed a motion to remand, and FCA filed a motion to dismiss. Plaintiffs embedded a request for leave to amend in its response to the motion to dismiss. The Court now turns to its analysis.

## II. Rule 12(b)(1) Motion to Dismiss

FCA's motion to dismiss requests dismissal pursuant to Rules 12(b)(1) and 12(b)(6). Rule 12(b)(1) motions "must be considered by the district court before other challenges since the court must find jurisdiction before determining the validity of a claim."[25] Pursuant to Rule 12(b)(1), the Court must dismiss a civil action for lack of subject matter jurisdiction.[26] The burden of establishing federal jurisdiction rests on the party seeking the federal forum.[27] "A case

---

[20] *Id.*
[21] *Id.* at ¶ 19.
[22] *Id.*
[23] *Id.* at ¶¶ 40–58.
[24] Dkt. No. 1, at ¶ 4.
[25] *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (quotation marks and citations omitted).
[26] Fed. R. Civ. P. 12(b)(1).
[27] *See Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[28]

The United States Constitution provides that federal courts may only decide actual cases or controversies.[29] Therefore, "[a] court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical. The key considerations are the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."[30] If the only remaining questions are purely legal, then a case is ripe; "conversely, a case is not ripe if further factual development is required."[31] Ultimately, a case is not ripe "if it rests upon contingent future events that may or may not occur as anticipated, or indeed may not occur at all."[32]

When conducting a Rule 12(b)(1) analysis, the Court may consider disputed facts and should grant the motion "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."[33] The Court can determine a lack of subject matter jurisdiction by looking at "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[34] Since the Court is not obligated to accept a plaintiff's complaint as true, the Court may consider extrinsic evidence when assessing whether it has jurisdiction.

---

[28] *Id.* (quotation marks and citations omitted).
[29] U.S. CONST. art. III, § 2.
[30] *Choice of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012) (quotation marks and citations omitted).
[31] *Id.* (quotation marks and citations omitted).
[32] *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotation marks and citations omitted).
[33] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (quoting *Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1010).
[34] *A.A. v. Hous. Indep. Sch. Dist.*, 2011 WL 181356, at *1 (S.D. Tex. Jan. 19, 2011).

### a. Analysis

FCA argues that this case is not ripe as the new Payne Motors Dealership in the McAllen Sales Locale ("Payne Motors Dealership") has not yet been established.[35] FCA informs the Court that Burns filed a protest against the establishment of the Payne Motors Dealership, and a merits hearing was held before the Texas State Office of Administrative Hearings ("SOAH") from September 11–19, 2017 to determine whether there is good cause for the establishment of the dealership under Texas Occupations Code § 2301.652(a).[36] FCA further explains that no decision has been rendered by the presiding SOAH Administrative Law Judges, and thus the Texas New Motor Vehicle Board has not issued its subsequent and necessary approval of a new dealership.[37] Accordingly, FCA notes that until that administrative process concludes, "FCA and Payne are prohibited by law from establishing the [Payne Motors] Dealership."[38] In a nutshell, FCA's ripeness argument is that "Plaintiffs' claimed *damages* are alleged to result from the establishment of the [Payne Motors] Dealership – an event that has not yet occurred and may never occur."[39]

The Court disagrees with FCA's position that this case is not ripe. One of Plaintiffs' causes of action against Defendants is fraud. Under Texas law, fraud has six elements:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.[40]

---

[35] Dkt. No. 3, at ¶ 33.
[36] *Id.* at ¶¶ 14–15, 17.
[37] *Id.* at ¶ 18.
[38] *Id.* at ¶ 19.
[39] *Id.* at ¶ 20 (emphasis added).
[40] *Lawrence v. Fed. Home Loan Mortg.*, 808 F.3d 670, 674 (5th Cir. 2015) (citing *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011)).

Here, the fraud allegation generally is Defendants represented that building new and larger facilities for a Jeep line was in Plaintiffs' financial interest, and throughout Plaintiffs' construction process, Defendants continued representing same without disclosing the Payne Motors agreement. While Defendants' ripeness argument focuses on *damages* being contingent upon approval of the Payne Motors Dealership, the relevant inquiry is whether Plaintiffs suffered *an injury* as a result of the alleged fraud. Indeed, in Texas, the injury element of fraud is not restricted to a monetary loss.[41] Here, Plaintiffs' factual allegations at the very least assert some injury already—they may not have continued their construction process if they were timely informed about the Payne Motors agreement. Furthermore, Plaintiffs may even have been injured by the mere fact that they had to become involved in the administrative process concerning the Payne Motors Dealership. Accordingly, the Court finds that the claim is ripe for adjudication and hereby **DENIES** the Rule 12(b)(1) motion.

Alternatively, even if the Court were to find this case was not ripe, *Smallwood* would also necessitate remand because there would be no reasonable basis for recovery as against either of the Defendants. Nonetheless, having now determined that this case is ripe for adjudication, the Court must consider whether it has diversity jurisdiction over the parties before turning to FCA's Rule 12(b)(6) motion.

### III. Motion to Remand

The removing party bears the burden of establishing whether federal jurisdiction exists,[42] and the Court must resolve all doubts regarding whether removal jurisdiction is proper in favor of remand.[43] The Court does not have subject matter jurisdiction under 28 U.S.C. § 1332(a)

---

[41] *Anderson, Greenwood & Co. v. Martin*, 44 S.W.3d 200, 212 (Tex. App.—Houston [14th Dist.] 2001)
[42] *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citation omitted).
[43] *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

unless the parties are completely diverse and the amount in controversy exceeds $75,000.[44] Generally, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy."[45]

Further, the residency of non-diverse defendants who have been improperly joined is not considered for diversity jurisdiction purposes.[46] The Fifth Circuit recognizes two manners by which improper joinder may occur: "(1) actual fraud in the pleading of jurisdictional facts, or (2) the inability of the plaintiff to establish a cause of action against the non-diverse party in state court."[47] The Fifth Circuit has interpreted the second manner to mean that "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[48] To determine whether a plaintiff has a reasonable basis for recovery, courts evaluate the sufficiency of the pleadings against non-diverse parties under the federal pleading standard.[49]

### a. Analysis

FCA argues that McDaniel was improperly joined because Plaintiffs' causes of action against her (1) are not ripe,[50] and alternatively, (2) fail to state a claim upon which relief can be granted.[51] Since the Court has determined that the claim is ripe, it turns to the second argument. FCA contests the sufficiency of Plaintiffs' complaint as to all three claims—conspiracy, fraud, and negligent misrepresentation. The Court need only find that at least one claim is sufficiently pled to determine that McDaniel is not improperly joined. In Texas, a corporate agent such as

---

[44] 28 U.S.C. § 1332(a).
[45] *Id.* § 1446(c)(2).
[46] *Salazar v. Allstate Tex. Lloyd's Inc.*, 455 F.3d 571, 574 (5th Cir. 2006).
[47] *Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004).
[48] *Id.*
[49] *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 208 (5th Cir. 2016).
[50] Dkt. No. 15, at ¶¶ 28–47.
[51] *Id.* at ¶¶ 48–80.

McDaniel—a dealer placement manager for FCA[52]—"can be held individually liable for fraudulent statements or knowing misrepresentations even when they are made in the capacity of a representative of the corporation."[53] Thus, McDaniel is subject to potential liability, and FCA does not seek dismissal on the inability to sue McDaniel. Rather, FCA asserts that the claims are factually insufficient to meet the *Iqbal/Twombly* standard. In fact, this is also the basis for the Rule 12(b)(6) motion for dismissal of FCA.[54]

FCA may be correct that the claims are insufficiently pled, but this would not be grounds for dismissal of McDaniel. Instead, *Smallwood* provides that "when, on a motion to remand, a showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same results for the nonresident defendant, there is no improper joinder; there is only a lawsuit lacking in merit."[55] Here, FCA's arguments in its Rule 12(b)(6) motion to dismiss mirror the arguments in response to Plaintiffs' motion to remand; both argue the insufficiency of the pleadings. The Court need not address the factual sufficiency as the same basis for seeking dismissal of FCA applies to the question of McDaniel's joinder. More specifically, throughout the complaint, McDaniel and FCA are addressed together. If the Court were to determine that McDaniel was improperly joined, the same finding would necessitate dismissal of FCA. Thus, this is a classic *Smallwood* problem, and remand is necessary. Accordingly, the motion to remand is **GRANTED.**

---

[52] *Id.* at ¶ 9.
[53] *Kingston v. Helm*, 82 S.W.3d 755, 759 (Tex. App.—Corpus Christi 2002, pet. denied).
[54] *See* Dkt. No. 3.
[55] *Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004).

## IV. Holding

For the foregoing reason, the Court **DENIES** the Rule 12(b)(1) motion to dismiss, **GRANTS** the motion to remand, and **DENIES AS MOOT** the Rule 12(b)(6) motion to dismiss as well as the motion for leave to amend. The case is hereby **REMANDED** to the 93rd District Court of Hidalgo County, Texas.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 18th day of January, 2018.

_____
Micaela Alvarez
United States District Judge